FreemaN, J.,
delivered the opinion of the court.
The bill in this case is filed by Anne P. Phipps, then widow of Joshua Phipps, but who has since intermarried with Calvin Waterbury, claiming dower in the lands of her late husband, and her distributive share of his personalty, on the assumption that she was *515 entitled to this relief by-having dissented from his will.
The husband, Joshua Phipps, died in July, 1861, after making his will, which was duly probated at August Term, 1861, of the County Court of Hawkins county, at Rogersville. By said will, Joseph B. Heis-kell, Frank L. Phipps, and Robert G. Netherland were appointed executors, and entered upon their duties as such on probate of the will.
At June Term, 1866, of the County Court of Hawkins county, the said Anne Phipps, in open court, entered her dissent to her husband’s will, as she alleges in her bill.
The bill excuses, and seeks to avoid the fact of failure to dissent from the will of her husband as required by law, in a series of allegations, which are in substance as follows:
1. She says that, in the first place, she was informed by Joseph B. Heiskell, one of the executors, that the law allowed her two years in which to enter her dissent, and never had any other or different information till after a year had expired.
2. That she verbally applied to the executors for information, and they failed fully to disclose to her the condition of her husband’s estate; yet, as she says, there was no fraudulent purpose in withholding this information.
3. The civil war in the country had the effect to suspend almost entirely judicial proceedings in the courts, and rendered it unsafe for most persons, especially females, to leave their homes for *516 any considerable length of time, and that it had only been very recently the courts were open in Hawkins county. She states that she lived almost alone, and about twenty miles from Rogersville, the county seat, and that there were roaming bands of guerrillas and straggling squads of soldiers going through the country, so that to have left her home at, that period would have been to leave it exposed to robbery and pillage.
4. She says: “ In consequence of the losses sustained by the emancipation of slaves, and by the plundering of soldiers, the provisions made by said last will and testament for your oratrix are greatly disproportionate to the value of the estate, and she has been reluctantly constrained by the force of circumstances beyond her control to resort to her legal right of dissenting from the will.”
She then goes on to insist that the section of Code, 2404, is a statute of limitations, and suspended by the Schedule of 1865 and statute of that year on the subject.
The executors and legatees of Joshua Phipps are made parties to this bill, and required to answer the same on oath; and, in conclusion, she prays that dower may be assigned complainant out of all the lands of her deceased husband, and damages for detention of same; that an account be taken of the estate, and an allowance be made for her year’s support and of her family, and she' have articles exempt from execution, and for a child’s part of the entire personal estate, including the negroes on hand at death of tes *517 tator, and a child's part of such negroes; and an account of all the assets in hands of executors, or might have -come into their hands with reasonable diligence, and for general relief.
The two acting executors, Netherland and Frank Phipps, answer this bill, with the wife of Netherland, who was a daughter of Joshua Phipps, together with Clay and wife, also legatees under the will — Heiskell having ceased to act as executor.
The executors admit they had qualified and proven the will as charged, of which the complainant had notice^ that the more important part of the business of the trust had long since been settled and adjusted, and that the complainant had formally dissented from the will in June, 1866, but utterly deny the validity of such proceeding. They then go on to deny that there was any impediment, in law or in fact, to prevent complainant from dissenting from the will of her husband within the one year after its probate. This denial is made in most positive and unequivocal terms.
They say, as to the charge that Heiskell had told her that she had two years in which to dissent; that-said Heiskell was well learned in the law and familiar with the provisions of the statute, uniformly accurate and careful in giving advice, and entertained the highest regard for complainant, ardently desiring to promote her interest, and was her legal and confidential adviser and friend — for these reasons it is, they claim, “ they are warranted in denying that Heiskell told her she had the two years in which to dissent;” *518 though they admit complainant “ now,” that is at filing the bill, may have some such impression.
The respondents positively deny that they at any time refused or neglected to give complainant any information whatever as to the condition of the estate. On the contrary, they say, all matters connected with the estate, its value, kind, nature and condition, were fully discussed with her, and other parties in interest; that a full and complete inventory was made under her immediate inspection and with her assistance, a copy of which they believe was furnished her. They allege, that so far from being ignorant of the condition of the estate, she was ' fully informed of the items and minutiae of the business, and they file with their answer a paper, evidencing a settlement between executors and complainant, signed by them all, January 24, 1862, which they insist shows her familiarity with all the details of the estate. This paper shows a division among the legatees of the notes, bonds and judgments belonging to the estate, between the parties entitled - under the will, assigning an ascertained share to each, and is alleged in answer to have been a division of all the property of that description, except an amount supposed to be sufficient to pay the debts and expenses of settlement of the estate. They say at this time Heiskell was present and explained to complainant the whole matter, which she fully understood, as she was very capable of doing. It may be remarked here, that the will disposed of specifically all the estate of Joshua Phipps to his wife and children, with great particularity, except one mare and perhaps *519 a part of a wagon; and it is alleged in the answer, and the fact is certainly that way, that she knew perfectly the contents of the will, and it is also shown by the answer and proof that she was very familiar with the whole property of the estate.
Without going into detail of denial of the answer, we may say in short, that all the material facts charged in the bill are either positively denied or fairly put in issue, and are to be proven.
We now examine the questions presented for our decision, both of law and of fact, that we may see whether the complainant is entitled to the relief she seeks.
We are relieved from the necessity in this case of going into the general doctrines of courts of equity, on the question of election by a widow, between a provision made by the will and her rights under the statute of distributions, and her dower right, by the fact that our own statute law has clearly and distinctly laid down the rule governing all such cases in our State. By this law we are bound, and, our only duty is to ascertain what that rule is, and then carry out by our judgment the intention and purpose of the Legislature, fairly and fully, neither extending nor limiting the plain meaning of the enactment by construction. The intention of the Legislature, when ascertained, is the law of the land. Any other principle would lead to making this court, not a judicial, but a legislative department of the government.
There is a will in this case, which is duly proven, in which provision is made for the widow of the tes *520 tator, both in real and personal property. What are the rights of a widow in such oases in reference to the estate of her husband?
The Code, s. 2404, provides that “ a widow may dissent from her husband’s will: 1. Where a satisfactory provision in real or personal estate is not made for her, in which case she shall signify her dissent in open court, within one year after the probate of the will. 2. Where a provision in personal estate is made for her, but the whole of the husband’s property, including the bequest, is taken for the payment of his debts; in which case she may, without any formal dissent, sue for her dower, and in both cases she shall be endowed, as if her husband had died intestate.
It was held in the case of Gupton v. Gupton et al., 3 Head, 488, that the term “endowed” does not limit the estate to be taken by the widow to one-third of the. land, but embraces the personalty, and that under this section the widow is entitled, on dissent to the will, to such portion of her husband’s property as she would have had if he had died intestate. In 9 looking at the language of the Code, it will be seen that it involves the idea necessarily that the widow is prima faeie bound by the will of her husband, but that a privilege is conferred on her by which she may avoid its provisions as to herself, and she may dissent from it. She is not required to assent to the will, but the will is binding and conclusive on her as to its dispositions, unless she shall signify her dissent in open court within one year after the probate of the will. In other words, the will is a perfected- *521 act, vesting rights and fixing title as to the widow, which may be defeated and rendered nugatory, so far as she is concerned, by dissent, signified in open court within the twelve months after probate of the will. These principles have been repeatedly held by this court, and such is the plain meaning of the statute. It is even held, and conclusively settled as the law, that if the widow fails to dissent within the time, allowed by law, it will be presumed conclusively that the provisions are satisfactory to her, and she having thus, by failure to dissent from the will, elected to take under it, can not be allowed to share in the estate of which her husband died intestate, and can only receive the property given to her by the will. See Malone, adm’r, v. Majors, 8 Hum., 579, 580; McClung et al. v. W. H. Sneed, 3 Head, 224. In case of McDaniel v. Douglass, 6 Hum., 229, the bill alleged that the executor, during the period of time in which the wife might dissent, had honestly believed, and so represented to her, that the assets of the estate in his hands would be adequate to payment of the debts, but. it turned out the debts were much larger than anticipated, and the estate had to be suggested us insolvent. For this reason, she filed her bill seeking dower in the real estate, as if she had dissented in time. The court say, that the case was entirely free from fraud on part of the testator or executor, the devisées or creditors. It presented the simple question, say the court, of a widow, for whom a satisfactory provision had been made by the will, omitting to dissent from it, because, during the time she *522 was allowed to enter her dissent, she was ignorant of the true amount of the liabilities of the estate; and, we may add, it seems she had been informed? by the executor that the assets were amply sufficient to pay (he debts.
The argument in that case was, that she had supposed herself about to receive a substantial and not dehisive provision under the will, and therefore only did not dissent. The court, however, say, “the answer to this is, the statute gives her six months to examine, to inquire, to consult friends; and if, without fraud and imposition,- she elects not to dissent, there is no principle upon which, against the express letter and obvious policy of the statute, she can claim to be thrown back on her dower right. She may in every case put herself on safe ground and dissent from the will, but if she decline to dissent, she must not, if the experiment turn out badly, expect the court to replace her upon her dower right.” The court conclude the opinion by the remark, that “to yield to the present application would be a virtual repeal of the statute, and it is better that a few widows should be permitted to choose ignorantly and injudiciously, and to their loss, than that we should have no ruje on the subject.”
This case would be conclusive of that part of the case under consideration, based on the alleged statement by Heiskell, that she had two years' in which to dissent, for it is not even alleged in the bill of complainant that there was any fraud on the part of Heiskell in 'this statement, even if it was ever made, *523 and the statement could not have tended as strongly to mislead, as the one in the above case that the estate was amply solvent; yet this statement, not being fraudulently made by the executor, was not held sufficient to do away with the effect of failure to dissent. In addition to this, the law presumes all parties know what are its provisions, and ignorance of law does not excuse a par’ty. Now, if Mrs. Phipps chose to make the executor her legal adviser, we can see no legal ground on which she can claim that others shall be affected in their rights by reason of even a clear and well-proven misstatement of the law to her. He had no interest under the will, no motive to mislead her, was her confidential friend, a lawyer, and if she chose to take his opinion as to her right on the subject, she can not now object that she was misled by such advice, and make others responsible for it in their property, as is sought in this case.
But when we come to look at the proof in the case, we do not feel at all satisfied that any such statement was ever made by Heiskell to her. It is true she swears to it in her deposition; but Heiskell, in his deposition, while he admits it might have been possible that he had made a mistake, does not think he ever did so.
But again, assuming the statement to have been made as charged, and that it was such a fraud as would, if relied on by her, have relieved complainant from her failure to dissent, it is well settled that even fraud, to be relieved against, must be operative aud injurious to the party: Cunningham v. Shields, 4 Hay., *524 44 to 48 (Coop. ed.); 2 Head, 29; 3 Head, 441; 4 Hum., 413. On looking at the proof in this ease, it is clear beyond all question that the failure to dissent from the will was not in anywise influenced or produced by the question of time in which she might enter the dissent, but the fact is unmistakable that other considerations of quite a different character wore operative to produce this result. It is not charged with any emphasis .in the bill that this assumed statement of Heiskell was the cause of her failure to dissent, although it is very earnestly pressed in the argument. This argument is mainly based on statements of complainant in her deposition, and proof that she had made similar statements to others as to what Heiskell had told her as to time allowed for her dissent.
We do not feel disposed to criticise the deposition of complainant farther than to say that it can not weigh with much force, from the evident fact, shown throughout the entire deposition, that her memory is colored and warped by a previous theory which she evidently tries to support, and which is necessary to the maintenance of her bill; and while we do not question the purposed integrity of the witness, we are bound judicially to weigh her testimony by the rules of law. Doing this, from the whole tenor, temper, and character of her deposition,- we could give it but little, if any, more weight than the statements contained in her bill, which she deposes to sustain. To illustrate the character of her answers, in r.eply to a question, on cross-examination, as to whether she had *525 not received certain property from the executors, and if she did not hold it still, she says that “ an inventory was made of all the personal property, and left -with me, but that no part of it was tendered me by the executors, nor was any part of the same ever accepted by me, in lieu of my right to dower. I have always felt that the property was held by me in trust for the estate.” She .was then asked if she had not held and . used the property as her own from the time of the settlement in 1862 till filing of the bill in 1866. Her reply is: “As above stated, I never received any legal and formal tender of the property as in lieu of my right of dower;” and so she concludes perhaps a half-dozen answers to questions put her, with the same idea, that she had not received anything in lieu of her dower.
On looking at this settlement it will be seen, however, that she, as well as the other parties, distinctly received the money and notes then as their shares under the will of testator, and that it was*a “ division of part of the notes and bonds,” etc., between the parties, in accordance with the provisions of the will, and it is abundantly shown by all the proof that she did hold this property under the will as her own, used it as such, received the rents and profits, and invested about $8,000 of proceeds in slaves; and further, it appears that on this division she was allowed, and did take, the first choice as to the notes, etc. It further clearly appears that no declaration of the fact so often repeated by her in deposition, that she felt she was only holding the *526 property as trustee for tbe estate, was ever made to any one; on tbe contrary, the proof is, that she expressed herself in a number of instances as well satisfied with the provisions of the will, and all her acts are consistent with these declarations.
This case bears no resemblance in its facts to the case of Smart and Wife v. Waterhouse, 10 Yer., 94. In that case the failure to dissent was the result of positive fraud on the part of the executors in proposing to give the widow $5,000 in cash for her share, if she would not dissent, and in representing that the estate was only worth about $40,000, whereas it was worth $75,000; and then, after preventing her dissent, they refused to comply with their agreement. In that case the widow had determined to dissent from the will within the time allowed by law, and was only prevented from doing so by the fraud of the executors. In this case, however, the widow had not determined to dissent within the twelve months; but, on the contrary, there can be no question, on looking at the entire proof in the case, that she had determined to acquiesce, and did acquiesce, in the provisions of the will. The case of Smart and wife is distinctly put upon the principle that where an act has been prevented from being done by fraud, equity will consider it exactly as if it had been done: p. 104. No act was prevented in this case, as no dis-. sent was purposed or intended within the twelve ^months.
The face of the bill, on the fourth ground stated as reason why she is entitled to dissent, is conclusive *527 of this view of the case. She says that, “in consequence of the losses sustained by the emancipation of slaves and the plundering by soldiers, the provision made by said last will and testament for your oratrix is greatly disproportionate to the value of her husband’s estate, and she has been reluctantly constrained, by the force of circumstances beyond her control, to resort to her legal right of dissenting from the will.” This language clearly implies, first, that the provision at first was not inadequate, or disproportioned to the value of the estate, and this is true; and second, it as distinctly implies that her failure to dissent had not been by constraint, or fraud, or force of circumstances, but, on the contrary, that her actual dissent in 1866 was with reluctance, as she was constrained to do so by force of circumstances beyond her control; that is, the losses during the war and the emancipation of the slaves. Before this constraint was upon her, she certainly had no intention to dissent; on the contrary, affirmatively assented to the provisions of the will, and certainly can not now be allowed, on any of these grounds, to disturb the dispositions of property made by her husband. The fact is clear from the whole record that the sentence above quoted from the bill of complainant is the real, and ■ the only real, ground upon which this attempt to dissent in 1866 was in fact predicated, together with the view of the law as then held by many, and among them her able counsel, that the Schedule and act of the Legislature suspending the statute of limitations, suspended the operation of the section of the *528 Code requiring dissent in twelve months, and therefore she was let in to her dower right.
As to the other grounds stated in the bill on which the right to dissent is predicated, we need but refer to them in a few words. First, failure to disclose the condition of the estate. The proof shows that she had as thorough knowledge of that condition as the executors themselves, and that she never sought any information bearing on the question of dissent, in any way, from the simple fact that no such purpose was entertained by her till long after the period for such dissent had expired.
As to the suspension of the courts and danger from bands of soldiers, the proof shows clearly that the County Court was held regularly up to September, 1863, and that there was neither danger nor difficulty in the way of her going to said courts. 'We may add, that if the fact had been that no courts were open, so that she could not have dissented in open com’t, as the statute requires, it would present quite a different question. As to the section of the Code having been suspended by Schedtile and act of the Legislature, as being a statute of limitations, we need not discuss the question, as it is not seriously pressed on us as maintainable, and we consider this question settled by previous adjudication.
As to the general appeal made to this court, founded on consideration that she was a widow, we have only to say, that as such, the law gave and defined special rights and privileges growing out of that fact, one of which is, that as such widow she must dissent from *529 her husband’s will within twelve months or she is bound by its provisions. She has failed to exercise this right, and is as much bound by her own act as any other individual, and while the law is liberal towards the widow, yet we must look to the law itself to see the limitations upon that liberality and what her rights are defined to be, and then enforce all rights given by law, not such as might be prompted by pity or tenderness for her condition. Upon the whole case, we think the Chancellor was well warranted in his decree dismissing the bill, and we affirm his decree with costs of this court and court below.